**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JULITA CAYLOR,

      Plaintiff,

vs.                                                                                    CASE NO. 3:09-cv-815-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of

the final decision of the Commissioner of the Social Security Administration (the

"Commissioner") denying Plaintiff's claim for a period of disability and disability insurance

benefits ("DIB").  Plaintiff filed a legal brief in opposition to the Commissioner's decision

(Doc. #18) and Defendant filed a brief in support of the decision to deny disability benefits

(Doc. #23).  Both parties have consented to the exercise of jurisdiction by a magistrate

judge, and the case has been referred to the undersigned by an Order of Reference dated

April 15, 2010 (Doc. #21).  The Commissioner has filed the transcript of the proceedings

(hereafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its

entirety, including the parties' arguments presented in their briefs and the materials

provided in the transcript of the underlying proceedings.  Upon review of the record, the

undersigned found the issues raised by Plaintiff were fully briefed and determined oral

argument would not benefit the undersigned in making his determinations.  Accordingly,

the matter has been decided on the written record.  For the reasons set forth below, the decision of the Commissioner is **REVERSED and REMANDED**.

## I. Procedural History

In the instant action, Plaintiff protectively filed an application for DIB on January 14, 2005, alleging disability commencing on February 17, 2004.  Plaintiff's initial claim and reconsideration were denied on May 17, 2005 and August 22, 2005, respectively.  Plaintiff then filed a timely written request for a hearing before an Administrative Law Judge on September 13, 2005.  On June 13, 2007, a hearing was held in Jacksonville, Florida, before Administrative Law Judge John D. Thompson, Jr. (the "ALJ") (Tr. 404-76).  In a decision dated November 15, 2007, the ALJ determined Plaintiff was not disabled by finding Plaintiff was able to return to her past relevant work as a line production solderer (Tr. 24).  The Appeals Council denied Plaintiff's request for review on March 27, 2009; thus, the ALJ's decision is the final decision of the Commissioner of Social Security (Tr. 4-6).  Plaintiff now appeals (Doc. #1).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1

(11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i-v)[1]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971). This limited standard of review precludes this Court from creating findings of fact, re-weighing evidence, or substituting this Court's judgement for that of the ALJ. *Moore v. Barnhart*. 405 F.3d 1208, 1211 (11th Cir. 2005).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, a mere suspicion of the existence of a fact is not enough, and the evidence must be relevant evidence a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence weighs against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d

---

[1]All references made to 20 C.F.R. will be to the 2010 edition unless otherwise specified.

1356, 1358 (11ᵗʰ Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence both favorable and unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must demonstrate that he applied the correct law.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11ᵗʰ Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11ᵗʰ Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but rather determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11ᵗʰ Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11ᵗʰ Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11ᵗʰ Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").  Additionally, it is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations.  20 C.F.R. § 404.1512(c).

### III. Background Facts

Plaintiff was born September 17, 1945; thus, she was fifty-eight (58) years old on her alleged onset date and sixty-one (61) years old at the time of the administrative hearing (Tr. 15, 409).  Plaintiff received a high school education in the Philippines and is able to read, write, and speak English (Tr. 409).  Plaintiff has past relevant work experience as a cable cutter, cable solderer, cable copier, juvenile care giver, plant nursery worker, meat packager, and yarn manufacturer (Tr. 412-20).  Plaintiff's past relevant work as a cable cutter, cable solderer, and cable copier were with the same company, Interconnect Cable (Tr. 411).  Plaintiff worked for Interconnect Cable from August 8, 1994 through June 3, 2000, and then returned from June 5, 2002 through February 17, 2004 (Tr. 70).

At Step 2 of the sequential evaluation process, the ALJ found Plaintiff suffered from the following severe impairments: a history of hypertension; history of noninsulin dependent diabetes mellitus; history of increased cholesterol; history of gout (intermittent); history of coronary artery disease with treatment of percutaneous transluminal coronary angioplasty ("PTCA"); history of obstructive sleep apnea treatment with continuous positive airway pressure ("CPAP"); and history of obesity (Tr. 17).  The ALJ also found Plaintiff suffered from the nonsevere impairment of depression (Tr. 17).

After considering the entire record, the ALJ found the following residual functional capacity ("RFC"): "to sit six hours in an 8-hour workday; stand/walk 2 hours in an 8-hour-workday; lift/carry 10 pounds occasionally and 5 pounds or less frequently" (Tr. 19).  The ALJ also included in the RFC that Plaintiff can only occasionally bend, stoop, crouch, crawl and kneel; can do no climbing; no work at unprotected heights; no work around dangerous machinery; and requires a temperature controlled work setting (Tr. 20).  Additionally, the

ALJ found no manipulative impairments; no communicative impairments; no mental impairments; and no need for an assistive device to stand or walk (Tr. 20).

## IV. Discussion

Plaintiff argues on appeal that the ALJ erred at Step 4 by finding Plaintiff is capable of performing her past relevant work (as she performed it), given her retained RFC (Doc. #18 at 7-9).   For the reasons set forth below, the undersigned is persuaded by this argument.

Pursuant to Social Security Rule 82-62, an ALJ is required to obtain sufficient evidence to make a decision as to whether a claimant retains the RFC to perform his or her past relevant work.  SSR 82-62, 1982 WL 31386, at *3 (S.S.A. 1982).  In making a Step 4 determination to deny disability benefits, the ALJ's decision must include the  following: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past occupation; and (3) a finding of fact that the individual's RFC would permit a return to her past occupation. *Id.* at *4.

An ALJ may find a claimant capable of performing her past relevant work if: (1) she retains the RFC to perform the particular functional demands and job duties of a past job, as "she actually performed it;" or (2) if she retains the RFC to perform the particular functional demands and job duties of a past job, as "ordinarily required by employers throughout the national economy," based upon the descriptions found in the United States Department of Labor's Dictionary of Occupational Titles ("DOT") or other accepted sources. SSR 82-61, 1982 WL 31387, at  *2-3 (S.S.A. 1982).

Here, the ALJ's finding that Plaintiff could perform her past relevant work as a line production solderer, as she performed it, was flawed.   To illustrate,  in  making  his

6

determination in this regard, the ALJ relied on: (1) Plaintiff's testimony that the soldering position was primarily a sit-down job (Tr. 24, *see also* Tr. 414); and (2) the VE's testimony that Plaintiff's job as a line production solderer, as she performed it, was at the sedentary exertional level (Tr. 468).  The ALJ's finding in this regard is flawed because Plaintiff's testimony does not establish that she performed the line production solderer job at the sedentary level.[2]

Since the ALJ found Plaintiff was capable of performing her past relevant work as a line production solderer, he was required to demonstrate how Plaintiff's sedentary RFC would allow for her to return to this type of work.  *See Saunders v. Astrue*, Case No. 5:06-cv-452-Oc-10GRJ, 2008 WL 821939, at *9 (M.D. Fla. Mar. 26, 2008).[3]

In this instance, the VE testified that, according to the DOT, the job of line production solderer is classified as "light work" (Tr. 468).  The ALJ asked the VE, based on Plaintiff's testimony, whether she performed the line production solderer position at the sedentary level, to which the VE responded in the affirmative (Tr. 468).  It appears the VE based this conclusion on Plaintiff's testimony that her job as a line production solderer job was an assembly line position where she primarily sat on a chair, soldered wires, and passed them to other individuals (Tr. 414).

---

[2]As per the DOT, the job of line production solderer is considered light work.  *See* UNITED STATES DEP'T OF LABOR, *Dictionary of Occupational Titles* § 813.684-022 (4th Ed. 1991).  Light work requires the ability to lift and carry 20 pounds occasionally and up to 10 pounds frequently, sitting up to 6 hours of an eight-hour workday, and standing/walking 6 or more hours in an eight-hour workday.  20 C.F.R.§ 404.1567(b); *see also* SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Nov. 30, 1982).

[3]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

The ALJ then asked the VE whether a hypothetical person with Plaintiff's age, education, and determined RFC would be able to perform Plaintiff's past relevant work as a line production solderer, either as she performed it or as it is customarily performed (Tr. 468-69).  The VE responded by stating that, although the occupation of line production solderer is classified as light work (as per the DOT), Plaintiff testified that she performed said job at the sedentary level (Tr. 468-69).  The VE thus determined Plaintiff is capable of returning to said occupation given her sedentary RFC (*see* Tr. 468-69).

As an initial matter, a thorough review of Plaintiff's testimony reveals she did not testify that she performed her position as a line production solderer at the sedentary level. As will be discussed more comprehensively below, Plaintiff's testimony actually reveals that she likely performed said occupation as per the DOT (which provides that the occupation of line production solderer is classified as light work because "the physical demands are above that of sedentary work").  DOT § 813.684-022.

The DOT further provides that a particular position should be rated light work if it requires: (1) walking or standing to a significant degree; or (2) sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) working at a production rate pace, entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.  DOT § 813.684-022.  It appears the line production solderer job, although performed primarily in a seated position, is classified as light work due to the production rate pace and the pushing/pulling of materials.

Plaintiff testified that, as a line production solderer, she lifted a heavy table "all the time"(Tr. 452).[4]   Plaintiff also noted in her Work History Report that, while working for Interconnect Cable, she was occasionally required to lift between 20 and 50 pounds (Tr. 71, 73).  Nowhere in the record is there evidence that Plaintiff's past relevant work positions at Interconnect Cable required that she lift only a maximum weight of 10 pounds or less. Defendant posits that "when Plaintiff was asked [by the ALJ] why she could no longer perform the position [of line production soldered] she did not list the lifting requirement as a reason" (Doc. #23 at 13).  Defendant goes on to state that Plaintiff's proffered reasons for not being able to perform the soldering job were only: (1) shortness in her breath; (2) swollen hands; and (3) an inability to walk (Doc. #23 at 14).  This statement is not entirely accurate regarding the content or tone of the hearing testimony.

Specifically, when the ALJ asked Plaintiff "[c]an you tell me why it is that the work you've done previously what specifically would be limiting you now," Plaintiff responded that, due to her elbow pain, "it's the lifting, heavy lifting on those [sic] table" (Tr. 453). When the ALJ inquired further about Plaintiff's soldering position, Plaintiff responded that she was unable to perform said position due to: (1) shortness of breath; (2) swollen hands; (3) inability to walk; and (4) elbow pain (Tr. 454).

While it is true that "Plaintiff did not state how much [exact] weight she lifted in the [soldering] position" (Doc. #23 at 13), Plaintiff's testimony in this regard (which was elicited

---

[4]The Court would note that the transcript reflects that Plaintiff testified to lifting a heavy table; however, the Court believes Plaintiff was referring to lifting heavy cable, as lifting and moving cables was a requirement of her job rather than lifting tables (*see* Tr. 452).  It is possible the court reporter misunderstood Plaintiff since she was raised in the Philippines and likely spoke with an accent.  This is especially so since Plaintiff later testified to lifting "those [sic] heavy table," which does not make sense grammatically as "table" is a singular noun (*see* Tr. 452, 453).

by the ALJ), coupled with the ALJ's response thereto, is telling.  To illustrate, during the hearing, Plaintiff's representative stated to the ALJ, "I did not get the weight she lifted in the [soldering] job she performed" (Tr. 452).  To wit, the ALJ asked Plaintiff if she had lifted anything other than small electronic components while soldering (Tr. 452).  Plaintiff responded in the affirmative by stating that she had to lift a heavy table there "all the time" (Tr. 452).  The ALJ's response was: "even if that [*i.e.*, the lifting of a heavy table] were true she still doesn't prevail because . . . that's a sedentary job the way it's described in the DOT" (Tr. 452).

As an initial matter, as noted above, the DOT does not classify the job of line production solderer as a sedentary occupation.  Additionally, it appears Plaintiff was attempting to tell the ALJ that her job as a line production solderer was indeed performed at the light exertional level, as per the DOT (since she was often required to lift a heavy table) (*see* Tr. 452-54).  The ALJ's statement that "even if that were true she still doesn't prevail [because the job is classified as sedentary per the DOT]," indicates he understood Plaintiff's testimony to mean she performed said job at the light exertional level (as per the DOT), rather than at the sedentary level (*see* Tr. 452).

Since it appears from the hearing transcript that the ALJ understood Plaintiff to testify that she performed the line production solderer at the light exertional level, and since the other evidence of record reveals she was occasionally required to lift between 20 and 50 pounds while working at Interconnect Cable, the Court cannot say the decision is

supported by substantial evidence.[5]  Therefore, the case shall be remanded for further

proceedings in order for the ALJ to, *inter alia*, clarify the exertional demands of Plaintiff's

past relevant work as a line production solderer, as performed, and re-evaluate Plaintiff at

Step 4 of the sequential evaluation process.

## V. Conclusion

For the foregoing reasons, the Court finds the decision of the Commissioner is

neither supported by substantial evidence, nor decided according to proper legal standards.

The Commissioner's decision is hereby **REVERSED and REMANDED** pursuant to

sentence four of 42 U.S.C. § 405(g).[6]

On remand, the Commissioner may hold other proceedings as he deems necessary,

but in any event shall re-evaluate the demands of Plaintiff's past relevant, as performed.

If it is ultimately found, at Step 4, that Plaintiff is unable to return to her past relevant work,

then the ALJ shall determine, at Step 5, whether Plaintiff can perform other work that exists

in substantial numbers in the regional and national economy.  Plaintiff is cautioned,

however, this opinion does not propose Plaintiff is entitled to disability benefits.  Rather, it

speaks only to the process the ALJ must engage in and the findings and analysis to be

---

[5]The ALJ should have elicited more exact testimony regarding the weight Plaintiff lifted as a line production solderer since he relied on her unclear testimony in finding she performed said occupation in a manner that is inconsistent with the DOT.

[6] Plaintiff's argument that the Court should apply the Medical-Vocational Guidelines (the "Grids") and direct that benefits be awarded to Plaintiff will not be addressed by the Court because of the ALJ's error at Step 4.  More particularly, in view of the fact the ALJ will be required to engage in a further evaluation of whether Plaintiff can perform her past relevant work, there is no need for the Court to engage in a speculative analysis at Step 5 by applying the Grids.  In the event the ALJ, on remand, concludes that Plaintiff cannot perform her past relevant work, the ALJ will then be required to complete the sequential analysis at Step 5 by relying upon the Grids or utilizing the testimony of a VE, if necessary, to determine whether there are a sufficient number of jobs available in the national economy given Plaintiff's RFC. *See Saunders*, *supra*, 2008 WL 821939, at *11, n.41.

made by the ALJ before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips*, 357 F.3d at 1244.

## VI. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file. The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing that the fourteen (14) day filing period for a claim for attorney's fees, set forth in Rule 54 of the Federal Rules of Civil Procedure, may be an unworkable time-line in cases remanded to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g)); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (requiring that unless a statute or court order provides otherwise, any motion for attorney's fees must be filed no later than fourteen (14) days after entry of judgment).

**DONE AND ORDERED** at Jacksonville, Florida this 28th day of September, 2010.

Copies to all counsel of record

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

12